## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **SHARON SMITH,** | : | **CIVIL ACTION NO.** |
| **Plaintiff,** | : | **3:13-CV-00828 (VLB)** |
| | : | |
| **v.** | : | |
| | : | |
| **CONNECTICUT DEPARTMENT OF** | : | |
| **CORRECTION and HARTFORD** | : | |
| **CORRECTIONAL INSTITUTE,** | : | |
| **Defendants.** | : | **August 4, 2014** |

### MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART DEFENDANTS' [Dkt. #18] MOTION TO DISMISS COMPLAINT

### I.     Introduction

The Plaintiff, Sharon Smith ("Smith"), brings this action against Defendants Connecticut Department of Correction ("DOC") and the Hartford Correctional Institute alleging violations of the Fourteenth Amendment to the U.S. Constitution, Plaintiff's rights pursuant to 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964, each stemming from alleged disciplinary action taken against the Plaintiff during the course of her employment with the Defendants. The Defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted, and pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.  For the reasons that follow, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part.

### II.     Factual Background

The following facts and allegations are taken from Plaintiff's complaint. Sharon Smith, an African American woman, has been employed by the DOC since 1993 as a Correctional Officer and, at the time of the incident in question, was assigned to the Hartford Correctional Institute ("HCI").  [Dkt. 1, Compl. ¶¶5, 7]. On March 7, 2012, a Caucasian co-worker accused Smith of making a derogatory comment toward her and of making sexual comments regarding two Caucasian visitors to HCI.  [*Id.* at ¶8].  The DOC initiated an investigation based on the co-worker's accusations and, within one day of the complaint, caused Ms. Smith to be transferred to the Cheshire Correctional Institution twenty-six miles away.  [*Id.* at ¶¶9-10].  Smith had requested that any temporary transfer be to the McDougall-Walker facility in Suffield, Connecticut, which was twenty-one miles away, five miles closer.  [*Id.* at ¶10].  Smith's transfer lasted from March 20, 2012 to March, 2013 when the DOC's internal investigation "concluded that there had been no conduct by her warranting discipline or discharge."  [*Id.* at ¶13].  She alleges that her transfer was disciplinary in nature and caused her to sustain loss of pay in the form of lost overtime benefits as well as increased travel time to work.  [*Id.* at ¶¶11, 14-15].  At no time was Smith's co-worker transferred from her assigned facility, nor was she required to endure loss of benefits or increased travel time. [*Id.* at ¶¶12, 16].

Smith alleges that "[d]uring the entire period of [her] employment with DOC, and including March 2012 to the present, the agency has maintained a policy and practice of imposing harsher discipline against its African-American employees than it imposes against its Caucasian employees."  [*Id.* at ¶18].  She

further alleges that the DOC "has maintained a policy and practice of assigning greater credibility to complaints made by Caucasian employees against its African-American employees than it imposes against its Caucasian employees when the complaint is made by an African-American employee." [*Id.* at ¶18].[1] Smith alleges three counts based on the DOC's conduct.  First, she alleges that the DOC has subjected her to "unlawful racial discrimination and unequal treatment all in violation of the Fourteenth Amendment to the U.S. Constitution" and as pursuant to 42 U.S.C. § 1983.  Second, Smith alleges that she was "subjected to racial discrimination in furtherance of DOC's policy and practice of discriminating against African-American employees in violation of their rights to make and enforce contracts, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens," in violation of 42 U.S.C. § 1981, and brought pursuant to 42 U.S.C. § 1983.  Lastly, Smith alleges that the Defendants have subjected her to unlawful racial discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended.  Smith requests compensatory damages, attorney's fees and costs, and such further and equitable relief as the Court deems appropriate.

III.    Standard of Review

    a.  Rule 12(b)(1)

Federal courts are courts of limited jurisdiction possessing only that power authorized by the Constitution and by statute.  *Mims v. Arrow Fin. Servs, LLC*, 132

---

[1] The Court notes that the Plaintiff's complaint is mis-numbered; although this allegation is made in paragraph 18, the previous paragraph is also numbered paragraph 18.

S. Ct. 740, 747 (2012); *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994); U.S. CONST. art. III, § 2.  "It is a fundamental precept that federal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress."  *Hamilton v. Hamilton-Grinols*, 363 F. App'x 767, 768 (2d Cir. 2010) (internal quotation marks and citations omitted).  "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Kokkonen*, 511 U.S. at 377 (internal citations omitted).  "Jurisdiction is essentially the authority conferred by Congress [or the Constitution] to decide a given type of case one way or the other."  *Hagans v. Lavine*, 415 U.S. 528, 538 (1974).  Jurisdiction must be established as a "threshold matter," a requirement that "spring[s] from the nature and limits of the judicial power of the United States and is inflexible and without exception."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (internal quotation marks and citation omitted).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *John Brady v. Int'l Bhd. of Teamsters, Theatrical Drivers & Helpers Local 817*, 741 F.3d 387, 389 (2d Cir. 2014) (quoting *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000)).

Lack of subject matter jurisdiction may be raised at any time by a party or by the court *sua sponte*.  *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider sua sponte issues that the parties have disclaimed or have not presented.

Subject-matter jurisdiction can never be waived or forfeited.") (internal citations omitted); *Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197, 1202 (2011) ("Courts do not usually raise claims or arguments on their own.  But federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press.").  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

In deciding a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) the Court "may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits."  *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n. 4 (2d Cir. 2007).  *See also Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings"); *Makarova*, 201 F.3d at 113 (holding same).

b. <u>Rule 12(b)(6)</u>

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Sarmiento v. U.S.*, 678 F.3d 147 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic

recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations and internal quotations omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint.  *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).  "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).  "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any

**6**

documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005)(MRK).

IV.   <u>Analysis</u>

a.   <u>Timely Service of Complaint</u>

Federal Rule of Civil Procedure 4(m) dictates that a plaintiff must make service on a defendant within 120 days of filing her complaint.  Fed. R. Civ. P. 4(m).  The Defendants contend that Smith served her complaint on them 122 days after filing it in this action, that she possessed no good cause for the delay, and that this Court must thus dismiss this action in its entirety.  The Plaintiff served her complaint timely.  Ms. Smith filed her complaint with this Court on June 11, 2013 (dkt. no. 1) and served the Defendants on October 9, 2013, on the 120th day after she filed her complaint.[2]  Service was thus timely and the Defendants appear to have erroneously calculated the time elapsed between these two dates.

---

[2] **Fed. R. Civ. P. 6 dictates that, when a time period is stated in days or a longer unit of time, computation of that time period should "exclude the day of the event that triggers the period."  Fed. R. Civ. P. 6(a)(1)(A).  Thus, the Court has not counted in its computation June 11, 2013, the date on which the complaint was filed in this action.  October 9 is 17 weeks and one day after the complaint was filed.**

Consequently, this action will *not* be dismissed in its entirety for lack of timely service.

      **b.  <u>Eleventh Amendment Sovereign Immunity</u>**

      The Defendants argue that Plaintiff's First and Second Counts pursuant to 42 U.S.C. §§ 1983 and 1981 are barred by the sovereign immunity conferred on the states and their agencies pursuant to the Eleventh Amendment.  The Court agrees.

      The Eleventh Amendment to the U.S. Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. Amend. XI.  The Supreme Court has explained that courts understand the Eleventh Amendment to stand for a two-part supposition: "first, that each State is a sovereign entity in our federal system; and second, that '[i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.' "  *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996) (citation omitted).  The Court has further recognized that this Amendment's "significance lies in its affirmation that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III."  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984).  "Sovereign immunity is the privilege of the sovereign not to be sued without its consent."  *Va. Office for Prot. & Advocacy v. Stewart*, 131 S. Ct. 1632, 1637 (2011).  The Eleventh Amendment thus dictates that

unconsenting states are generally immune from suit in federal court. *Seminole Tribe of Florida*, 517 U.S. at 54 ("For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States 'was not contemplated by the Constitution when establishing the judicial power of the United States.' "); *Pennhurst*, 465 U.S. at 100 ("[i]t is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). "The Eleventh Amendment bar to suit in federal courts extends not only to the state itself but also to any entity that is deemed to be an arm of the State." *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 280 (1977); *see also Pennhurst State Sch. & Hosp.*, 465 U.S. at 100 ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment").

The Eleventh Amendment bar to suit is not absolute; a state "may consent to suit in federal court and, in certain cases, Congress may abrogate the States' sovereign immunity." *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990) (internal citations omitted). The standards for consent and abrogation are "particularly strict." *Id.* at 305. "The Court will give effect to a State's waiver of Eleventh Amendment immunity only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction," and a waiver "must specify the State's intention to subject itself to suit in *federal court.*" *Id.* at 306, 307.

Moreover, "Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute." *Id.* at 305 (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242 (1985)).

Lastly, where a private party brings suit against a state official in his official capacity, "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief … and may not include a retroactive award which requires the payment of funds from the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 677 (1974).  Where a private party brings suit directly against a state or its agencies, however, and immunity has not been waived by the state or abrogated by Congress, "the Eleventh Amendment bars a federal court from granting any relief on that claim." *Pennhurst State Sch. & Hosp.*, 465 U.S. at 120.  It is well-settled that the party asserting federal jurisdiction bears the burden of establishing jurisdiction.  *R.G. Barry Corp. v. Mushroom Makers, Inc.,* 612 F.2d 651, 655 (2d Cir. 1979).  The Plaintiff bears the burden of pleading and establishing jurisdiction.  Fed. R. Civ. P. 8(a)(1).  Accordingly, where an exception to the general principle that a state enjoys sovereign immunity applies, the Plaintiff must plead facts establishing that exception in her plain statement of the grounds for the court's jurisdiction required by Rule 8.

    i.  <u>Fourteenth Amendment Violation Pursuant to 42 U.S.C. § 1983</u>

In her first count, Smith seeks monetary damages against the two defendant state agencies for alleged violations of the Fourteenth Amendment, as enforced through 42 U.S.C. § 1983.  Such a claim is well-known to be unsustainable.  The Supreme Court has oft reiterated that § 1983 does not abrogate a State's Eleventh Amendment immunity from suit without its consent. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 67 (1989) ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"); *Inyo Cnty., Cal. v. Paiute-Shoshone Indians of the Bishop Cmty. of the Bishop Colony*, 538 U.S. 701, 708 (2003) (reiterating *Will*'s holding that states are not "persons" for § 1983 purposes); *Quern v. Jordan*, 440 U.S. 332, 344-45 (1979) ("… § 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on the question of state liability and which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States").  The Second Circuit and the courts within its jurisdiction have also long upheld this principle.  *See, e.g.*, *Komlosi v. N.Y. State Office of Mental Retardation & Developmental Disabilities*, 64 F.3d 810, 815 (2d Cir. 1995) (holding that state agency could not be sued in employment discrimination action pursuant to § 1983, as "[i]t is now settled that a state cannot be sued under § 1983 … and that this rule applies to States or governmental entities that are considered 'arms of the state' for Eleventh Amendment purposes.") (citations omitted); *Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 137 F. Supp. 2d 83, 87 (N.D.N.Y. 2001) aff'd, 290 F.3d

**11**

476 (2d Cir. 2002) cert. denied 537 U.S. 1227 (Feb. 24, 2003) (holding that "[i]t is well-settled that Eleventh Amendment immunity applies to suits brought against the state pursuant to Section 1983"); *Cates v. State of Conn. Dep't of Corr.*, 3:98CV2232(SRU), 2000 WL 502622, at *12  n.14 (D. Conn. Apr. 13, 2000) ("Section 1983 does not abrogate the state common law doctrine of sovereign immunity").

Here, the Plaintiff has sued the DOC and HCI, which neither party disputes are arms of the state of Connecticut.  It is further undisputed that the state of Connecticut has not consented to be sued in federal court pursuant to § 1983, nor has Congress abrogated the state's sovereign immunity in this area.  Thus, the defendant entities enjoy the same Eleventh Amendment immunity as does the state of Connecticut itself and may not be sued pursuant to 42 U.S.C. § 1983.  *See Reynolds v. Blumenthal*, 304CV218 PCD, 2006 WL 2788380 (D. Conn. Sept. 26, 2006) (holding that Eleventh Amendment barred § 1983 claims seeking both monetary and injunctive relief against state agency and alleging termination of plaintiff's employment in retaliation for filing whistleblower complaint); *Burgos v. Dep't of Children & Families*, 83 F. Supp. 2d 313, 316 (D. Conn. 2000) (claims against un-consenting state for alleged discrimination in violation of the Fourteenth Amendment and pursuant to § 1983 were barred by 11th Amendment); *Walker v. Conn.*, 106 F. Supp. 2d 364, 368-69 (D. Conn. 2000) (§ 1983 claim against state and officials seeking monetary, retroactive equitable remedies was barred by Eleventh Amendment immunity); *Gaynor v. Martin*, 77 F. Supp. 2d 272, 281 (D. Conn. 1999) (dismissing § 1983 claims sounding in employment discrimination

against state agency and state official in his official capacity as barred by Eleventh Amendment).

Yet another well settled legal principle renders this claim unsustainable. Smith's § 1983 claim must fail because states and their agencies are not "persons" for purposes of § 1983.  Section 1983 provides that every "person" acting under color of state law shall be liable for "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983.  It is well settled that states are not considered persons for purposes of § 1983, and thus may not be sued pursuant to this statute regardless of whether a state has waived its sovereign immunity.  *Will,* 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983"); *Kinney v. Conn.*, 622 F. Supp. 2d 1, 10 (D. Conn. 2009) (holding same); *Johnson v. Conn. Dep't of Corr.*, 392 F. Supp. 2d 326, 335-36 (D. Conn. 2005) aff'd sub nom. *Johnson v. State of Conn. Dep't*, 225 F. App'x 42 (2d Cir. 2007) (holding same); *Reynolds*, 2006 WL 2788380 ("state agencies are not considered 'persons' subject to liability under § 1983").  It is undisputed that Defendants DOC and HCI are not "persons" pursuant to § 1983 and thus they may not be sued under this statute.

Consequently, Plaintiff's first count, alleging a deprivation of her rights under the Fourteenth Amendment and pursuant to 42 U.S.C. § 1983, is DISMISSED.[3]

### ii.   Violation of 42 U.S.C. § 1981, As Enforced By 42 U.S.C. § 1983

In Count Two, Smith alleges that she has been harmed by the DOC's policy and practice of engaging in racial discrimination in violation of her rights under 42 U.S.C. § 1981.  [Dkt. 1, Compl. ¶¶19-20].  The Defendants argue that Plaintiff's § 1981 claim must be dismissed as barred by the Eleventh Amendment, because § 1983 provides the exclusive federal remedy for violations of § 1981 and § 1983 claims are not cognizable against the state or its agencies.  The Court agrees.

Section 1981 provides in relevant part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every state and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens."  42 U.S.C. § 1981(a).  Section 1981 "affords a federal remedy against discrimination in *private* employment on the basis of race.  An individual who establishes a cause of action under § 1981 is entitled to both equitable and legal relief, including compensatory and, under certain circumstances, punitive damages."  *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 459-60 (1975) (emphasis added).  An individual may bring an employment discrimination claim

---

[3] The Court notes that the Plaintiff has failed to respond to the Defendants' arguments for dismissal of her first count brought under 42 U.S.C. § 1983.

under both Title VII and § 1981 concurrently.  *Id.* at 460; *Cates v. State of Conn. Dep't of Corr.*, 3:98CV2232(SRU), 2000 WL 502622, at *6 (D. Conn. Apr. 13, 2000).

However, in *Jett v. Dallas Indep. Sch. Dist.*, the Supreme Court held that "the express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor."  491 U.S. 701, 735 (1989). *See also Johnson v. Conn. Dep't of Corr.*, 392 F. Supp. 2d 326, 335 (D. Conn. 2005) aff'd sub nom. *Johnson v. State of Conn. Dep't*, 225 F. App'x 42 (2d Cir. 2007) ("Claims under section 1981 against state actors must be brought under 42 U.S.C. § 1983").  Because Smith's claim for alleged § 1981 violations against state agencies DOC and HCI have been brought pursuant to 42 U.S.C. § 1983, which does not abrogate the state's sovereign immunity, Smith's claim is barred by the Eleventh Amendment, as discussed in the previous section.  *See, e.g., Wagner v. Conn. Dep't of Correction*, 599 F. Supp. 2d 229, 237-38 (D. Conn. 2009) (holding that plaintiff's employment discrimination claims for non-prospective relief pursuant to § 1981 as through § 1983 were barred by sovereign immunity); *Coger v. Conn.*, 309 F. Supp. 2d 274, 281 (D. Conn. 2004) aff'd sub nom. *Coger v. Conn. Dep't of Pub. Safety*, 143 F. App'x 372 (2d Cir. 2005) (plaintiff's § 1981 claims against state agency were barred by Eleventh Amendment as state had not waived and Congress had not abrogated state's immunity from suit pursuant to §§ 1981 or 1983).  *See also Walker*, 106 F. Supp. 2d at 368-69 (§ 1981 claim against state and officials seeking monetary, retroactive equitable remedies was barred

by Eleventh Amendment immunity); *Cates*, 2000 WL 502622 (§ 1981 racial discrimination claim against CT Department of Correction, a state agency, was barred by Eleventh Amendment); *Gaynor*, 77 F. Supp. 2d at 281 (dismissing § 1981 claims sounding in employment discrimination against state agency and state official in his official capacity as barred by Eleventh Amendment; "As to plaintiff's civil rights claim under 42 U.S.C. § 1981, the Eleventh Amendment is clearly a bar to plaintiff's claims against the State and State agencies.").

Consequently, Plaintiff's second count, alleging a deprivation of her rights pursuant to 42 U.S.C. § 1983 and as enforced through 42 U.S.C. § 1983, must be DISMISSED.

### c.  Discrimination in Violation of Title VII of the Civil Rights Act of 1964

The Defendants have made no independent arguments for complete dismissal of Plaintiff's discrimination claim pursuant to Title VII of the Civil Rights Act, and the Court notes that the State of Connecticut does not enjoy sovereign immunity from federal suits alleging Title VII violations.  *See, e.g.*, *Quern v. Jordan*, 440 U.S. 332, 344 (1979) (Title VII contains the "threshold fact of congressional authorization to sue the State as employer, because the statute made explicit reference to the availability of a private action against state and local governments in the event the [EEOC] or the Attorney General failed to bring suit or effect a conciliation agreement); *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976) ("…the Eleventh Amendment, and the principle of state sovereignty which it embodies, are necessarily limited by the enforcement provisions of § 5 of the

Fourteenth Amendment. In that section Congress is expressly granted authority to enforce 'by appropriate legislation' the substantive provisions of the Fourteenth Amendment, which themselves embody significant limitations on state authority."); *Walker*, 106 F. Supp. 2d at 368 ("The State may … be sued for violations of Title VII").

The Court notes, however, that the Plaintiff has not alleged in her complaint that she has exhausted her administrative remedies by bringing her Title VII claim first to the Equal Employment Opportunity Commission ("EEOC") and obtaining a release of jurisdiction from that agency.  The Supreme Court has held that filing a timely charge with the EEOC is not a jurisdictional prerequisite to suit in federal court, but rather a requirement that, "like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."  *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).  The Second Circuit has reiterated this conclusion by holding that presentation of a Title VII claim to the EEOC is not a jurisdictional prerequisite, "but only a precondition to bringing a Title VII action that can be waived by the parties or the court."  *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000) (quotation marks and citation omitted); *see also Odom v. Doar*, 497 F. App'x 88, 89 (2d Cir. 2012) cert. denied, 133 S. Ct. 2864, 186 L. Ed. 2d 918 (U.S. 2013) (citing same).  The Defendants have not asserted, and the Court at this juncture cannot conclude, that they have waived this prerequisite to Plaintiff's filing of her Title VII claim in this Court.  Nor has the Plaintiff plead facts establishing or argued that this condition should be waived on the basis of

estoppel or equitable tolling.  Accordingly, the Court finds that the Plaintiff has failed to exhaust her administrative remedies without a valid excuse.

### i. Jury Determination of Plaintiff's Claim for Lost Wages

The Defendants request that the Court dismiss Plaintiff's jury claim with regard to her demand for back pay pursuant to Title VII, as front and back pay are forms of equitable relief that do not entitle a plaintiff to jury determination of lost wages.  The Court agrees.

Prior to the Congress's passage of the Civil Rights Act of 1991,

> a plaintiff seeking a monetary award for disparate treatment and disparate impact claims under Title VII could recover only back pay and front pay.  Because back pay and front pay have historically been recognized as equitable relief under Title VII, neither party was entitled to a jury trial; both disparate treatment and disparate impact claims were tried to the bench.

*Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 157 (2d Cir. 2001), *abrogated on other grounds by Wal–Mart Stores, Inc. v. Dukes*, —— U.S. ——, 131 S. Ct. 2541 (2011).

> The 1991 Act enhanced Title VII's remedial scheme for disparate treatment claims. In addition to back pay and front pay, it authorized the recovery of compensatory and punitive damages in disparate treatment disputes, see 42 U.S.C. § 1981a(a)(1), and afforded a jury trial where these additional remedies are sought.

*Id.* at 158.

The Second Circuit has since reaffirmed that, "[b]ecause a lost wages award—whether in the form of back pay or front pay—is an equitable remedy, a party is generally not entitled to a jury determination on the question." *Broadnax*

*v. City of New Haven*, 415 F.3d 265, 270-72 (2d Cir. 2005).  However, as "having juries calculate lost wages requires no special competence or authority belonging solely to the court," "when a party demands jury consideration of lost wages under Title VII and the party's opponent fails to object, Rule 39(c) permits the district court to submit the lost wages issue for a non-advisory jury determination."  *Id.* at 272.

The Plaintiff here does not dispute that the Second Circuit's decisions in *Robinson v. Metro-N. Commuter R.R. Co.* and *Broadnax v. City of New Haven* are binding on this Court.  Instead, she stresses that economic damages may be tried by a jury *if both sides consent*.  Here, not only has the Plaintiff failed to obtain the Defendants' consent, the Defendants have clearly expressed their objection to a jury determination of the Plaintiff's claim for lost wages.  Consequently, consistent with Second Circuit jurisprudence and the decisions of other courts within this Circuit, Plaintiff's claim for lost wages under Title VII will be decided by the Court and not by a jury, unless or until the Defendants consent or fail to object to submission of this claim to a jury for a non-advisory determination. *See*, *e.g.*, *Perez v. Conn. Dep't of Corr. Parole Div.*, 3:13-CV-150 JCH, 2013 WL 4760955 (D. Conn. Sept. 4, 2013) (citing *Broadnax* and granting defendants' motion to strike plaintiff's jury demand on her front and back pay claim pursuant to Title VII, as plaintiff's lost wages claim was a "purely equitable remedy that does not trigger a Title VII plaintiff's jury right"); *Hamza v. Saks Fifth Ave., Inc.*, 07 CIV. 5974 FPS, 2011 WL 6187078 (S.D.N.Y. Dec. 5, 2011) ("case law is clear that the issue of back and front pay damages in a Title VII retaliation case is to be

resolved by this Court rather than a jury. . . . this concept also applies to retaliation claims …"); *Todaro v. Siegel Fenchel & Peddy, P.C.*, 04-CV-2939 JS/WDW, 2009 WL 3150408 (E.D.N.Y. Sept. 25, 2009) ("The Court may submit the question of back pay to the jury as an advisory verdict, or for a binding verdict if both parties consent or fail to object"); *Tse v. UBS Fin. Servs.*, Inc., 568 F. Supp. 2d 274, 294-95 (S.D.N.Y. 2008) (citing *Robinson* and *Broadnax* and concluding that, where defendant had objected to jury's determination of front and back pay pursuant to Title VII but had then failed to object to plaintiff's amendment of claims to assert lost wages pursuant to NY civil rights law and requested jury determination of these claims, defendants had constructively consented to jury consideration of lost wages); *Howell v. New Haven Bd. of Educ.*, 3:02CV736 (JBA), 2005 WL 2179582, at *6 (D. Conn. Sept. 8, 2005) (citing *Broadnax* and holding that, where defendant did not object to jury's consideration of front or back pay pursuant to the ADA, whose remedies are identical to those under Title VII, the defendant had consented to the jury trial on those issues pursuant to Fed. R. Civ. P. 39(c), but nonetheless concluding that, because an award of front pay is an equitable remedy within the discretion of the trial court, the court would decide the issue of front pay).

### d. Sufficiency of Factual Pleadings

In her opposition to the Defendants' motion to dismiss, the Plaintiff notes that the Defendants "seem to suggest that there is some factual insufficiency of the pleadings under the *Iqbal* and *Twombley* [sic] standards" and proceeds to argue that the complaint sufficiently pleads her claims.  [Dkt. 26, P's Opp. to MTD, p. 5].

20

The Defendants, however, have not moved to dismiss based on the factual sufficiency or insufficiency of the Plaintiff's claims pursuant to *Iqbal* or *Twombly*, and thus the Court declines to entertain this unraised argument at this juncture.

## V.    Conclusion

For the foregoing reasons, Defendants' [Dkt. #18] Motion to Dismiss the Complaint is GRANTED IN PART and DENIED IN PART.  Plaintiff's first and second counts pursuant to 42 U.S.C. §§ 1981 and 1983 are DISMISSED.  Plaintiff's third count, alleging a violation of Title VII of the Civil Rights Act of 1964, remains active.  The Plaintiff's claim for lost wages pursuant to Title VII, however, will be determined by the Court at the appropriate time and not by a jury, unless or until the Defendants consent to jury determination of lost wages.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: August 4, 2014